UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY CLINE, Individually and as ) | |
| Next Friend and Probate Representative for the ) | |
| Estate of Derek Landon Wood; ) | |
| SABRINA BETH CLINE, and ) | |
| STEPHANIE BLANKENSHIP, ) | |
| ) | |
| **Plaintiffs,** ) | Case No. 3:15-0275 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| PUBLIX SUPER MARKETS, INC. and ) | |
| PUBLIX TENNESSEE, LLC, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 11) filed by the defendants, Publix Super Markets, Inc., and Publix Tennessee, LLC (together, "Publix"), to which the plaintiffs have filed a Response in opposition (Docket No. 15), and the defendants have filed a Reply (Docket No. 22). For the reasons discussed herein, the defendants' Motion will be denied.

## BACKGROUND

### I. Factual Allegations of the Complaint[1]

**A. Events Giving Rise to the Plaintiffs' Claims**

This action stems from the tragic death of Derek Landon Wood, an 11-year-old boy who died after consuming a cookie purchased at one of the defendants' supermarkets located in Clarksville, Tennessee.

---

[1] Unless otherwise noted, the facts are drawn from the plaintiffs' Complaint. (Docket No. 1.)

1

At the time of his death, Wood lived with his mother, plaintiff Beth Cline, and his grandparents, plaintiff Gary (Wood's legal custodial guardian) and Jeanette Cline, in Alabama. At age 4, Wood was diagnosed as suffering from several allergies, including an allergy to tree nuts. As a child, the plaintiffs allege that Wood suffered from at least two allergic reactions to food products. The plaintiffs allege that both reactions were successfully treated with an antihistamine and resulted in a full recovery.

On May 31, 2014, Wood traveled with his mother to Clarksville, Tennessee, to visit Ms. Cline's sister, plaintiff Stephanie Blankenship. On June 3, 2014, Ms. Cline and Ms. Blankenship brought Wood and Ms. Blankenship's daughter, Raya, to Publix Store No. 01425 on Tiny Town Road in Clarksville, Tennessee (the "Store"). While at the Store, Ms. Cline, Wood, and Raya approached the Store's bakery counter that displayed baked dessert products, such as brownies, cookies, pastries, and muffins. According to the Complaint, there were no signs displayed at or behind the bakery counter warning of allergens or for the potential of allergens in Publix bakery products.

The plaintiffs allege that Wood asked his mother to purchase him a chocolate cookie called the "Chocolate Chew" (the "Cookie"). The plaintiffs further allege that, following Wood's request, Ms. Cline asked a Publix associate who was attending the bakery counter whether the Cookie contained any tree nuts. According to the Complaint, the Publix associate answered Ms. Cline and responded that the Cookie contained no tree nuts. The plaintiffs allege that this misrepresentation was inaccurate because the Cookie did, in fact, contain tree nuts. The plaintiffs allege that, relying on the Publix associate's misrepresentation as to the ingredients of the Cookie, Ms. Cline purchased the Cookie for Wood and a sugar cookie for her niece. The

2

plaintiffs further allege that the Publix associate placed the cookies in a wrapper and bag, neither of which contained a label disclosing the presence of allergens or any ingredients.

After paying for their groceries and returning to Ms. Blankenship's home, Ms. Blankenship unwrapped the Cookie, "broke off a piece, saw there were no nuts and ate it, and gave the rest of the Chocolate Chew to [Wood]." Wood left the kitchen and returned shortly after, informing his mother and aunt that his mouth was burning and that he suspected that he was allergic to the Cookie.

Following his consumption of the Cookie, Wood's health rapidly declined as a result of his allergic reaction. Despite medical treatment by both his mother and medical professionals, Wood died later that evening as a result of anaphylactic shock.

### B. Factual Allegations with Respect to Publix Bakery Cookies, Generally

The plaintiffs allege that most, if not all, Publix stores contain a bakery. The Publix bakery offers products for retail sale that include breads, rolls, muffins, pastries, cookies, cupcakes, and cakes. According to the Complaint, some of the bakery products are packaged and wrapped, and others are not and appear to be sold in individual units and racked behind a display window, similar to the case from which Wood selected the Cookie. The plaintiffs further allege that there is no different in the freshness or ingredients of cookies sold by Publix that are packaged and those that are sold individually in the display case.

According to the Complaint, although Publix creates the impression that its packaged and unpackaged products are baked on site, no Publix bakery products offered for retail sale are made fresh or prepared in the store locations where they are offered for sale. Additionally, other than some cakes and cupcakes, no Publix bakery products are made-to-order. Moreover, although some cakes that are made-to-order are baked in store, the batter mix is prepared at a

Publix regional bakery plant. Other Publix products are prepared by outside vendors and packaged and offered for sale at stores as Publix products.

Publix bakery products that are packaged contain labels that identify the product's ingredients, including food allergens. However, identical products (allegedly taken from the same batches as packaged products) that are displayed on a rack behind a display window are placed in a bag when selected by a consumer. The bags used for products purchased from display do not display a label that indicates product ingredients and food allergens.[2] The plaintiffs further allege that, because the bakery products are entirely the same with the exception of where and how they are displayed, the bakery products being offered for retail sale by Publix that are not packaged could easily be packaged and labeled.

## II. Procedural Background

Mr. Cline, Ms. Cline, and Ms. Blankenship filed this lawsuit against Publix on March 20, 2015, alleging various claims grounded in products liability and negligence, including (1) strict liability; (2) a breach of the implied warranty of fitness pursuant to T.C.A. § 47-2-318; (3) common law negligence based on (a) Publix's negligent retention, training, and supervision of its employee who advised Ms. Cline that the Cookie did not contain tree nuts and (b) Publix's failure to warn consumers that the Cookie contained allergens; (4) a violation of the Tennessee Consumer Protection Act, T.C.A. 47-18-104 *et seq.* ("TCPA"); and (5) a claim for declaratory relief pursuant to (a) the Food Allergen Labeling and Consumer Protection Act, 21 U.S.C. § 343 ("FALCPA") and (b) T.C.A. § 29-39-102. (Docket No. 1.)

---

[2] Nor are the display products labeled as to ingredients or allergens.

The defendants filed this Motion to Dismiss on May 11, 2015. (Docket No. 11.) Specifically, the Motion to Dismiss seeks dismissal of Counts 1, 2, 4, and 5A of the Complaint, as well as a portion of Count 3 (the plaintiff's negligence claim). The motion argues that (1) the plaintiffs' products liability claims (Counts 1, 2, and part of Count 3) are based upon a purported statutory or common law duty to warn that does not exist and, therefore, must be dismissed; (2) the plaintiffs' claim under the TCPA (Count 4) fails because they have not alleged damages that entitle them to bring a private right of action under the TCPA; and (3) FALCPA does not apply to Publix and, therefore, Count 5A seeking declaratory relief pursuant to FALCPA should be dismissed.

In response to the defendants' Motion, the plaintiffs sought the court's permission to withdraw Count 4 of the Complaint, their TCPA claim. (Docket No. 14.) The court granted the plaintiffs' Motion to Withdraw Count 4 of the Complaint on May 26, 2015. The plaintiffs filed a Response in opposition to the defendants' remaining arguments. (Docket No. 15.) The defendants filed a Reply with the court's permission on June 5, 2015. (Docket No. 22.)

## ANALYSIS

### I. Rule 12(b)(6) Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must

5

determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## II.     The Defendants' Motion to Dismiss

Publix argues that the plaintiffs' products liability claims (Counts 1, 2, and part of 3) related to the Chocolate Chew cookie must fail because the Complaint fails to adequately allege that Publix owed a federal or Tennessee statutory or common law duty to warn consumers that the Cookie contained tree nuts. Publix further contends that the plaintiffs' declaratory relief claim asserted pursuant to FALCPA (Count 5A) must fail because the allegations of the Complaint establish that Publix is exempt from the statute's scope. The court will address each of Publix's arguments in turn.

### A. Have the Plaintiffs Properly Pled Products Liability Claims Based on Publix's Failure to Warn of Allergens in the Cookie?

The parties appear to agree that, in order to satisfy Rule 8's pleading requirements as to their products liability claims, the plaintiffs must sufficiently allege that Publix was obligated by

6

statutory or common law to warn consumers that the Cookie, as sold to the plaintiffs, contained tree nuts. The elements of negligence claims in Tennessee are duty, breach of duty, cause in fact, loss or injury, and proximate cause. *McCarley v. W. Quality Food Serv.*, 948 S.W.2d 477, 479 (Tenn. 1997). Whether a defendant owes a plaintiff a duty of care is a question of law. *Bradshaw v. Daniel*, 854 SW.2d 865, 869 (Tenn. 1993.)

The plaintiffs appear to allege that Publix breached two duties owed to consumers: (1) FALCPA's requirement that sellers label certain products that contain major food allergens pursuant to 21 U.S.C. § 343(w); and (2) the Tennessee Products Liability Act's ("TPLA") provision that obligates a manufacturer or seller of a product to warn consumers about unreasonably dangerous products. The breach of these duties forms the basis of the plaintiffs' strict liability, breach of implied warranty of fitness, and negligence claims (Counts 1, 2, and part of Count 3). In their pending motion, the defendants argue that neither duty obligated Publix to warn the plaintiffs and, therefore, the plaintiffs' products liability claims rooted in Publix's alleged duty to warn must fail.

1. Did FALCPA Obligate Publix to Warn the Plaintiffs of Allergens in the Chocolate Chew Cookie?

   a. FALCPA, Generally

The FALCPA, which amended the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 341 ("FDCA"), is part of a statutory regime "designed primarily to protect the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.*, --- U.S. ---, 132 S. Ct. 2228, 2234-35 (2014). "The FDCA prohibits the misbranding of food and drink." *Id.* (citing 21 U.S.C. §§ 321(f), 331. Generally, the FDCA and FALCPA require that manufacturers or sellers of food products label food with information related to the food products' ingredients and any

7

allergens that the products may contain. 21 U.S.C. §§ 341; 341-1. The FDCA further provides that the Secretary of the Food and Drug Administration ("FDA") may promulgate regulations related to the labeling requirements set forth by the legislation. *Id.*

With respect to the general labeling requirements set forth by Congress, under the FALCPA, a food is considered misbranded "if it is a food intended for human consumption and is offered for sale, unless its label or labeling bears nutrition information that provides," for example, (1) the serving size customarily consumed and expressed in a common household measure appropriate to the food; (2) the number of servings or other units of measure per container; (3) the total number of calories derived from any source and from the total fat in each serving size; (4) the amount of a variety of nutrients, including, *inter alia*, total fat, saturated fat, cholesterol, sodium, sugars; and (5) any vitamin or mineral required to be placed on a label under the FDCA. 21 U.S.C. § 343(q).

The FALCPA further considers a food product to be misbranded if it (1) is not a raw agricultural product; (2) contains a major food allergen; and (3) does not properly indicate the allergen on its label. 21 U.S.C. § 343(w). Section 343(w) of the FALCPA includes some exceptions to the labeling requirement, noting that a food is not misbranded with respect to allergens if (1) the word "contains," followed by the name of the food source from which the major food allergen is combined, follows immediately after or adjacent to the list of ingredients printed on the label; or (2) the common or usual name of the major food allergen in the list of ingredients is followed in parentheses by the name of the food source from which the major food allergen is derived. Accordingly, if a container of peanut butter is sold with a label that indicates that the peanut butter "contains peanuts," the product is not considered misbranded.

Certain foods are exempt from the labeling requirements of the FDCA and, by extension, FALCPA. Section 343(q)(5) expressly exempts:

> (i) food "which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments;" and
>
> (ii) food "which is processed and prepared primarily in a retail establishment, which is ready for human consumption, which is of the type described in subclause (i), and which is offered for sale to consumers but not for immediate human consumption in such establishment and which is not offered for sale outside such establishment."

Accordingly, by its plain text, the statute exempts establishments such as a fast-food restaurant, food truck or lemonade stand.

In regulations promulgated in accordance with the FDCA, the Food and Drug Administration ("FDA") has elaborated on the subject of what food products, if any, are exempt from the statutory obligations as to nutrition labels. 21 C.F.R. § 101.9(j) outlines food products that are exempt from the labeling requirements:

> (1)(i) Food offered for sale by a person who makes direct sales to consumers (e.g., a retailer) who has annual gross sales made or business done in sales to consumers that is not more than $500,000 or has annual gross sales made or business done in sales of food to consumers of not more than $50,000, *Provided*, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising.
>
> . . .
>
> (2) . . . [F]ood products that are:
>
> (i) Served in restaurants, *Provided*, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising. . . .
>
> (ii) Served in other establishments in which food is served for immediate human consumption (e.g., institutional food service establishments, such as schools, hospitals, and cafeterias; transportation carriers, such as trains and airplanes; bakeries, delicatessens, and retail confectionary stores where there are facilities for immediate consumption on the premises; food service vendors,

> such as lunch wagons, ice cream shops, mall cookie counters, vending machines, and sidewalk carts where foods are generally consumed immediately where purchased or while the consumer is walking away, including similar foods sold from convenience stores; and food delivery systems or establishments where ready-to-eat foods are delivered to homes and offices). . . .

(*Id.*)

> b. *The Complaint Sufficiently Alleges that the Publix Bakery Is Subject to the Requirements of the FDCA and FALCPA*

Publix argues that the Publix bakery that sold the Cookie to Wood and his mother falls squarely within this exception to the FDCA and FALCPA, as described by the federal regulations. Specifically, Publix points out that the Cookie was "placed in a bag" after being selected by Wood. Publix further argues that the allegations of the Complaint establish that Wood's cookie was "made to order" and therefore exempt from labeling requirements. Publix appears to contend that, because products sold from behind the display case are not packaged and can be sold individually, the products are indistinguishable from cookies sold at a mall cookie counter or a muffin sold at a coffee cart. Accordingly, Publix argues, the allegations of the Complaint establish that all food sold from the display case in a Publix bakery falls within the exceptions stated by the federal regulations and, therefore, the food is exempt from the labeling requirements of the FDCA and FALCPA.

Upon careful review of the allegations of the Complaint, the court disagrees. The proper inquiry at the Rule 12 stage is whether the allegations of the Complaint, taken as true, properly support the plaintiffs' claim that Publix was obligated under the FDCA and FALCPA to warn consumers of allergens in its bakery products. The Complaint's allegations, in fact, establish the contrary of Publix's argument. For instance, the Complaint alleges that the Cookie was not prepared in the store for immediate consumption, as 21 C.F.R. 101.9(j) contemplates. Moreover, the grocery store's bakery appears to be distinct as a general matter from, for instance, a lunch

wagon, food truck, or vending machine. There are no allegations that there was a place to eat on the premises or anywhere near the Publix bakery. Similarly, the allegations indicate that this Cookie was baked before being brought to the Publix store and displayed in the same form in which it would be sold and consumed—not at all similar to, for instance, a deli sandwich that is made-to-order per a customer's specifications. Additionally, based on the allegations of the Complaint, the court is unpersuaded that Publix bakery items taken from the display case, like the Chocolate Chew cookie, are "generally consumed immediately where purchased or while the customer is walking away." The Complaint plausibly alleges that a number of the products sold by Publix bakeries are sold for consumption at home—just like the allegedly identical bakery products that are packaged and sold in the same area of the store (*i.e.*, the Chocolate Chew cookies taken from the same batch as those sold in the display case but sold in plastic packages with labels.)

For these reasons, the court concludes that the plaintiffs have sufficiently alleged that the Publix bakery was subject to the labeling requirements of 21 U.S.C. § 343(w).[3] Accordingly, the court will deny the defendants' motion to dismiss with respect to the plaintiffs' products liability claims premised upon FALCPA.

    2. <u>Does the TPLA Obligate Publix to Warn Consumers of Tree Nuts in the Chocolate Chew Cookie?</u>

    *a. The TPLA, Generally*

The Tennessee Products Liability Act, T.C.A. § 29-28-101 *et seq.*, states that "[a] manufacturer or seller of a product shall not be liable for any injury to a person . . . caused by the

---

[3] The court notes that an extensive search revealed no federal cases interpreting Section 343(w) and 21 C.F.R. § 101.9(j) in the context of circumstances similar to the factual allegations asserted by the plaintiffs.

product unless the product is determined to be in a *defective condition* or *unreasonably dangerous* at the time it left the control of the manufacturer or seller." T.C.A. § 29-28-105 (emphases added). The statute explains that "unreasonably dangerous" means that

> a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

*Id.* at § 29-28-102(8). Accordingly, to survive dismissal at the Rule 12 stage, the plaintiffs must allege facts sufficient for the court to infer that (1) the Chocolate Chew cookie was defective or unreasonably dangerous; (2) the defect existed at the time that the product left Publix's control; and (3) the plaintiffs' injuries was proximately caused by the defective product. *King v. Danek Med., Inc.*, 37 S.W.3d 429, 434-35 (Tenn. Ct. App. 2000).

### b. The Parties' Arguments

Publix argues that the alleged danger posed by the Cookie—the tree nuts included in its ingredients—does not support a claim that the Cookie was "unreasonably dangerous" under Tennessee law, because the tree nuts in the Cookie were obvious to an average consumer. Specifically, Publix points to Section 29-28-105(d) of the TPLA, which states that a "product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is *apparent to the ordinary user*." Publix points to a handful of Tennessee state court decisions involving a variety of toxic or dangerous products, where the Tennessee courts have concluded that it is "the knowledge and experience of an ordinary consumer of the product, rather than a particular product," that determines whether a danger or hazard would have been apparent to an ordinary user. *See, e.g.*, *Memphis Bank & Trust Co. v. Water Servs., Inc.*, 758 S.W.2d 525, 528

12

(Tenn. 1988) (overturning dismissal of products liability action after bench trial related to contaminated water and chemical products); *See, e.g.*, *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d 690, 692 (Tenn. 1984) (assessing motion to dismiss claim filed under TPLA against manufacturer and seller of grain alcohol); *Shoemake v. Omniquip Int'l*, 152 S.W.3d 567, 574 (Tenn. Ct. App. 2004) (affirming grant of summary judgment to equipment manufacturers and sellers sued by estate of worker who was killed in a fall at a construction job site).

Publix also relies considerably on its interpretation of the Restatement (Second) of Torts and contends that, pursuant to the Restatement, it was not obligated to warn the plaintiffs about tree nuts in the Cookie. The parties agree that Tennessee courts have consistently turned to the Second Restatement and, specifically, Comment j of the Restatement, when assessing whether a duty to warn exists under the TPLA. *See, e.g.*, *Pemberton*, 664 S.W.2d at 692. Comments i and j to Section 402A of the Restatement discuss "unreasonably dangerous" products. Comment i states:

> *i. Unreasonably dangerous.* Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. . . .

RESTATEMENT (SECOND) OF TORTS § 402A cmt. i (1965) ("Comment i").

The Restatement also explains that, in certain cases, sellers are required to give directions or warnings about hidden dangers or hazards in products, including major allergens found in food.

13

> *j. Directions and warnings.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs and strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965) ("Comment j"). Publix argues that, pursuant to Comment j, the burden was on the plaintiffs to be aware of the nuts in the Cookie.

The plaintiffs contend that, to the contrary, Comment j supports the plausibility of their claim because their cause of action alleges that (1) the product contained an ingredient to which a substantial number of the population are allergic, and (2) the ingredient is one which the consumer would reasonably not expect to find in the product.

### c. Failure-to-Warn Challenges Premised upon Hidden or Unknown Ingredients

Upon review of the authorities cited by the parties, the court notes that the circumstances of the plaintiffs' action appear to be novel within the Sixth Circuit. Consequently, with the exception of one recent Tennessee Court of Appeals decision, the parties have urged the court to look to cases that are either (1) substantially distinguishable from the plaintiffs' action with respect to factual circumstances, or (2) premised upon other states' products liability laws.

Here, unlike the cases cited by the defendants, the allegedly unreasonably dangerous product is food that contained an "unknown ingredient"—in fact, a major allergen. Accordingly, the court has reviewed the small universe of cases addressing "unknown ingredients" and allergens in failure-to-warn tort actions. The Court of Appeals for the District of Columbia Circuit discussed the history of failure-to-warn challenges around the country in a 2007 action

filed by lactose-intolerant individuals against sellers of milk.  *See Mills v. Giant of Maryland, LLC*, 508 F.3d 11, 14-15 (D.C. Cir. 2007).  The *Mills* court noted that, "[i]n the food context . . . tort-law principles foreclose failure-to-warn liability when the risk that some people might have an adverse reaction to the food is 'widely known.'"  *Id.* at 13.  Citing the Third Restatement of Torts, the court wrote that, "when 'both the presence of an allergenic ingredient in the product and the risks presented by such ingredient are widely known, instructions and warnings about that danger are unnecessary.'"  *Id.* (quoting RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. k (1998)).  Accordingly, the *Mills* court held, the district court had properly dismissed the lactose-intolerant plaintiffs' claims because the plaintiffs (1) were aware of their allergies and (2) were aware that consuming milk would cause allergic reactions.  The court distinguished two other categories of cases from the plaintiffs' claims, however—cases in which "the risks from food are *not* considered 'widely known:' 'unknown-ingredient' cases and unknown-harm' cases."  *Id.* at 14 (emphasis in original).

Unknown ingredient cases, like the plaintiffs' action here, address situations "where a substantial number of consumers are allergic to a food ingredient that reasonable consumers would not expect to find in the food."  *Mills*, 508 F.3d at 14 (citing *Livingston v. Marie Callender's, Inc.*, 72 Cal. App. 4th 830, 832 (1999) (MSG in fresh vegetable soup); *Brown v. McDonald's Corp.*, 101 Ohio App. 3d 294 (1995) (seaweed-derived ingredient in hamburger)).  In *Livingston*, cited by the *Mills* court, the California Court of Appeals concluded that a trial court had improperly stricken the plaintiff's strict liability cause of action upon a pretrial motion *in limine* by simply concluding that there was nothing wrong with the MSG in the soup.  On appeal, the *Livingston* court wrote, the proper analysis of a defendant's liability pursuant to the Restatement depends on whether (1) the product contained an ingredient to which a substantial

15

number of the population are allergic, (2) the ingredient is one which the consumer would reasonably not expect to find in the product, and (3) the defendant knew of the presence of the ingredient and the danger it posed to those consumers with allergies. Accordingly, the appellate court remanded the claim for trial on the strict liability claim.

### d. The Plaintiffs Have Sufficiently Alleged a Failure-to-Warn Challenge Premised upon Tennessee Law

First, the defendants urge the court to dismiss the plaintiffs' products liability claim premised on Tennessee law because there was nothing wrong with the presence of tree nuts in the Cookie—they were an intended ingredient. As the *Livingston* court noted, though, ending the inquiry at whether or not an ingredient is "wrong" is inappropriate under the Restatement. To overcome a Rule 12 Motion, instead, the TPLA requires the plaintiffs to sufficiently allege that (1) the Cookie contained an ingredient that is a major allergen; (2) the consumer would not reasonably expect to find tree nuts in the Cookie; and (3) the defendants knew of the presence of the ingredient and that it was a major allergen. Here, the plaintiffs' Complaint sufficiently states factual allegations as to these three requirements.

Second, the court is unpersuaded by Publix's argument that, based on the Complaint, the Cookie cannot be considered unreasonably dangerous because the nuts in the Cookie were "apparent to the ordinary user." T.C.A. § 29-28-105(d). In fact, the plaintiffs specifically allege that the nuts were not apparent to the plaintiffs, even after Ms. Blankenship broke off a piece of the Cookie and ate it herself. Accordingly, there is nothing in the pleadings to suggest that the plaintiffs' failure-to-warn claim premised on Tennessee law should fail because the risk of an allergic reaction was apparent to an ordinary consumer. The allegations with respect to the hidden nature of the allergen in the Cookie also support a finding that the plaintiffs' claims fall

16

outside of the "common allergies" contemplated by Comment j. Pursuant to Comment j, of course, lactose-intolerant individuals purchasing cow's milk and individuals allergic to peanuts ordering peanut butter sandwiches cannot properly assert products liability claims based on a seller's failure-to-warn. The allegations of the Complaint here, however, plausibly state that the allergens in the Cookie were not apparent to an ordinary consumer, even a consumer suffering from a common allergy.

The court is also unpersuaded by the defendants' argument that a Washington state court case, *Thompson v. E. Pac. Enters., Inc.*, is "directly on point." 115 Wash. App. 1042 (Wash Ct. App. 2003). In *Thompson,* the plaintiff suffered from a peanut allergy and, after ordering almond chicken to be delivered to her home from a restaurant, suffered a serious allergic reaction that caused a heart attack. The plaintiff filed, among other claims, a claim for strict liability premised on Washington's Product Liability Act. Reviewing a trial court's decision to grant summary judgment to the restaurant, the Washington Court of Appeals cited Section 402A of the Second Restatement and concluded that the plaintiff's failure-to-warn claim must fail because the restaurant was entitled to assume that those with common allergies will be aware of them. Notably, the Washington Court of Appeals cited *Livingston* and stated that, unlike *Livingston*, the plaintiff in *Thompson* had not informed the restaurant of her allergy and did not obtain an express warranty that the dish did not contain peanut or any trace amount of peanut. Here, of course, as in *Livingston*, the plaintiffs informed a Publix employee of Wood's allergy before purchasing the Cookie and obtained an express warranty that the Cookie did not contain tree nuts.

Finally, the court notes that the parties discuss a recent Tennessee Court of Appeals case at length in their respective briefs, *Bissinger v. New Country Buffet*. No. M2011-02183-COA-

17

R9, 2014 Tenn. App. LEXIS 331 (Tenn. Ct. App. June 6, 2014). Upon close review, the court concludes that *Bissinger* supports a conclusion that Publix was obligated to warn consumers regarding the tree nuts in the Cookie. In *Bissinger*, the Tennessee Court of Appeals affirmed a trial court's decision to deny summary judgment to the defendant, a restaurant, based on the defendant's failure to warn the plaintiff of a danger in a food product. The defendant served raw oysters to the plaintiff, a patron, who subsequently contracted a fatal bacterial infection caused by the presence of naturally-occurring bacteria in the oysters. The court concluded that, although the law does not impose a duty to warn of risks that are widely known (such as the risk of consuming excessive alcohol), the proof in the *Bissinger* case showed that there was no difference between the appearance, smell, or taste of an oyster that is safe to eat and one that contains large quantities of the deadly bacteria. Accordingly, the court concluded that the danger of the product was not open and obvious and, therefore, the restaurant was subject to a duty to warn consumers of the risk of eating raw oysters.

Similarly, here, the allegations of the Complaint suggest that the presence of tree nuts in the Cookie was not open and obvious to consumers. Moreover, as the Restatement expressly instructs, where a consumer would not reasonably expect to find a major allergen in a product and where the defendant is aware of the allergen's presence in the product, the seller is obligated to issue a warning to consumers. Upon review of the plaintiffs' Complaint, there is no suggestion that the plaintiffs could have reasonably expected to find an allergen in the Cookie. Therefore, at this stage, taking the allegations of the Complaint as true, the court concludes that the plaintiffs have appropriately alleged that the Cookie was "unreasonably dangerous" at the time that it left the seller's possession. Consequently, the court will deny the defendants' motion to dismiss with respect to the plaintiffs' products liability claim premised upon Tennessee law.

### B. The Plaintiffs Have Properly Alleged a Declaratory Relief Claim Pursuant to FALCPA

As a final housekeeping matter, Publix argues that the court should dismiss the plaintiffs' declaratory relief claim pursuant to FALCPA because Publix's bakery is exempt from the labeling requirements of the FALCPA under the federal regulations. For the reasons discussed with respect to the plaintiffs' products liability claim premised on FALCPA, the court finds the defendants' argument unpersuasive. Accordingly, Publix's motion to dismiss will be denied with respect to Count 5A of the Complaint.

### CONCLUSION

For these reasons, the defendants' Motion to Dismiss (Docket No. 11) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge