UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY CLINE, individually and as Next Friend and Probate Representative for the Estate of Derek Landon Wood, <br><br> Plaintiff, <br><br> v. <br><br> PUBLIX SUPERMARKETS, INC. and PUBLIX TENNESSEE, LLC, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:15-0275<br>) Judge Aleta A. Trauger<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

Pending before the court is a Motion for Partial Summary Judgment (Docket No. 64) filed by the defendants, Publix Supermarkets, Inc. and Publix Tennessee, LLC (Collectively "Publix"), to which the plaintiff, Gary Cline, has filed a Response (Docket No. 70), and Publix has filed a Reply (Docket No. 74). For the reasons discussed herein, the motion will be granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

This action was filed on March 20, 2015, seeking to hold Publix liable for the death of eleven-year-old Derek Landon Wood ("Landon"). (Docket No. 1.) Landon's death resulted from an anaphylactic allergic reaction to eating pecans (a type of tree nut) contained in an unlabeled chocolate chew cookie purchased by his mother, Sabrina Cline, from the full service bakery counter of Publix Store No. 01425 in Clarksville, Tennessee on June 3, 2014 (the "Cookie"). The Complaint, which names as plaintiffs Gary Cline, Sabrina Cline, and Stephanie Blankenship (Ms. Cline's sister and Landon's aunt), brings several claims against Publix under Tennessee law, seeking compensatory and punitive damages: strict liability, implied warranty of

1

fitness, negligence, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b) (the "TCPA").  These claims are all based on allegations that Publix failed to affix a label to the Cookie stating its ingredients or to otherwise warn consumers that the Cookie contained tree nuts, a known major allergen, rendering the Cookie unreasonably dangerous.  The negligence and TCPA claims are additionally based on allegations that the bakery associate who gave the Cookie to Landon's family misrepresented that it did not contain tree nuts, to which Landon was highly allergic, and that Publix failed to properly train or supervise its sales associates in responding to customer inquiries about allergens in food products.  The Complaint also seeks a declaratory judgment that 1) Publix violated the federal Food Allergen Labeling and Consumer Protection Act of 2004, 21 U.S.C § 343(w) (the "FALCPA") and 2) the cap on noneconomic damages under Tennessee law (Tenn. Code Ann. § 29-39-102) violates the Tennessee and United States Constitutions and, therefore, should not apply to this action.

On May 26, 2015, the court granted the plaintiff's Motion to Withdraw the TCPA claim and issued an Order dismissing this claim with prejudice.  (Docket Nos. 16, 17.)

On June 2, 2016, the court granted the plaintiff's motion to voluntarily dismiss: 1) the declaratory judgment claim related to the FALCPA[1] and 2) all claims of plaintiffs Sabrina Cline and Stephanie Blankenship, removing them as parties to this action.  (Docket No. 44.)

On October 11, 2016, Publix filed a Motion for Partial Summary Judgment along with an accompanying Memorandum, seeking to dismiss: 1) the plaintiff's claims for strict liability and breach of implied warranty of fitness, on the grounds that these claims – which are based on a failure to label the Cookie or otherwise warn that it contained pecans – cannot proceed because

---

[1] While the plaintiff's motion was not brought on this ground, the FALCPA does not, in any event, provide a private right of action.  As discussed more fully below, however, the FALCPA still informs the scope of available common law actions for food allergen labeling.

2

Publix complied with the FALCPA, which did not require it to label the Cookie, and the cookie was not unreasonably dangerous or defective as sold; 2) the plaintiff's negligence claim, to the extent it also arises from the allegations that the Cookie was not labelled or was unreasonably dangerous as sold (though Publix expressly states that it does not seek to dismiss the negligence claim to the extent it arises from allegations related to conversations between Landon's family and the bakery associate who provided them with the Cookie),[2] and 3) all requests for punitive damages. (Docket Nos. 64, 65.) Publix simultaneously filed two appendices of attached exhibits. (Docket Nos. 66-67.)

    Publix specifically argues that, by dropping his claim for a declaratory judgment that Publix violated the FALCPA, the plaintiff has conceded that the FALCPA did *not* require Publix to label the Cookie. (Docket No. 65, p. 5.) While Publix did not file a separate Statement of Undisputed Material Facts, Publix's Memorandum references the undisputed facts that the Cookie was made from scratch at the Publix store from which it was sold, that it was available only through the store's full-service bakery counter, and that it was unpackaged and ready to eat at the time it was sold – facts that are well supported in the record. (Docket No. 66-3 (Deposition of Nicole Esposito, manager of the Publix store where the Cookie was sold), pp. 78:11-84:14; Docket No. 66-4 (Deposition of Jane Pixley, Business Development Director for

---

[2] Publix correctly cites the Tennessee Product Liability Act for the rule that all product claims except those based on an *express* warranty or misrepresentation require a showing that the product is defective or unreasonably dangerous as sold. Tenn. Code Ann. § 29-28-105. Accordingly, the plaintiff's claims that seek to hold Publix liable for the absence of an ingredient label or other warning hinge on a showing that the cookie was defective or unreasonably dangerous (whether as a matter of strict liability or implied warranty), while the negligence claim based on the alleged express warranty or misrepresentation by the sales associate does not (regardless of the fact that this claim is framed in the Complaint as a negligence claim). Publix seeks to dismiss only those claims that are based on the Cookie being defective as sold.

3

Publix bakeries), p. 42:21-25.) It is further undisputed that no ingredient label was affixed to the Cookie or otherwise given to Landon's family.[3]

The parties agree that there is a dispute of material fact as to whether the bakery associate who served Landon's family the Cookie misrepresented that the Cookie did not contain tree nuts and, accordingly, as stated above, Publix does not move for summary judgment with respect to the plaintiff's claims arising from this exchange. Publix does, however, argue that the facts as presented by the plaintiff cannot support punitive damages related to this claim. Publix specifically cites the testimony of Ms. Cline, where she states that the bakery associate responded to her inquiry about the presence of tree nuts in the Cookie and her concerns about Landon's allergy by simply stating that the Cookie was a chocolate cake cookie with a brownie texture, but she concedes that the associate did not *expressly* state that the Cookie had no nuts. (Docket No. 67-2 (Deposition of Sabrina Cline), pp. 225:6-230:16.)[4]

---

[3] There is evidence in the record that: 1) a sign hanging in the Publix bakery where the Cookie was sold stated that the bakery's products regularly contain tree nuts, and 2) cross-contact tree nut warnings were printed on the paper bag in which the Cookie was placed and the price label affixed to the bag. Ms. Cline stated in her deposition, however, that such warnings would not have influenced her decision to give Landon the Cookie, so long as she believed the Cookie itself did not contain tree nuts. (Docket No. 67-2, pp. 211:3-212:20.) The plaintiff's claims arising from Publix's failure to label the Cookie are, thus, not based on an alleged failure to warn of potential cross-contact or general use of allergens in the bakery, but on the plaintiff's position that any such warnings were insufficient on their own to convey that the Cookie actually contained pecans. This evidence is, therefore, irrelevant to the instant motion, though it may be relevant at trial if Publix argues that Ms. Cline was contributorily negligent for having ignored these signs.

[4] The bakery associate, Julianne Henderson, in fact, outright denies that Ms. Cline or anyone in Landon's family ever informed her of Landon's tree nut allergies or asked at all about the ingredients in the Cookie. (Docket No. 66-1 (Deposition of Julianne Henderson), pp. 34:12-41:24.) This is a dispute for the trier of fact to resolve at trial but, for purposes of this motion, the court considers the facts in the light most favorable to the plaintiff and will assume that Ms. Cline's account is true.

In its motion, Publix also requests that the court reserve judgment on the plaintiff's claim for declaratory relief as to the constitutionality of Tennessee's noneconomic damages cap, because this issue is not yet ripe. (Docket Nos. 64-65.)

On October 28, 2016, the plaintiff filed a Response in opposition, along with an appendix of attached exhibits. (Docket Nos. 70, 71.) The plaintiff denies that his withdrawal of his claim seeking a declaratory judgment that Publix violated the FALCPA is a concession that Publix was exempt from labelling the Cookie under the FALCPA (stating only that the statute is difficult to understand and has not been interpreted by caselaw involving similar factual scenarios). He, instead, argues that such an exemption would not, in any event, warrant dismissal of the plaintiff's claims. (Docket No. 71, p. 2.) The plaintiff, however, neither refutes the facts that the Cookie was made from scratch at the Publix store where it was sold, was unpackaged and ready for consumption at the time of sale, and was not offered elsewhere, nor does he reference or cite any evidence to the contrary. The plaintiff also makes no express argument that Publix *was* bound by the FALCPA to label the Cookie and was not exempt.

In his Response, the plaintiff also concedes that the constitutionality of Tennessee's noneconomic damages cap is not yet ripe for determination.[5] (Docket No. 70, p. 1.)

On November 7, 2016, Publix filed a Reply. (Docket No. 74.)

## **LEGAL STANDARD**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse

---

[5] Indeed, a recent opinion by the Tennessee Supreme Court held that the constitutionality of Tennessee's noneconomic damages cap is not ripe for review unless and until a plaintiff receives a noneconomic damages verdict in excess of the cap. *Clark v. Cain*, 479 S.W.3d 830, 831 (Tenn. 2015).

5

party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of her claims. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Although the plaintiff has dropped his declaratory judgment claim for violation of the FALCPA, Publix's compliance with the FALCPA remains central to the plaintiff's claims seeking to hold Publix liable for failing to label the Cookie as containing pecans or tree nuts. Under the FALCPA, which is a 2004 amendment to the federal Food, Drug, and Cosmetic Act (the FDCA), "[a] food shall be deemed to be misbranded . . . [i]f it is not a raw agricultural

6

commodity and it is, or it contains an ingredient that bears or contains, a major food allergen, unless" it is labeled as containing the major food allergen. 21 U.S.C. § 343(w). The provisions of the FALCPA, however, apply only to foods that are required under the FDCA to bear ingredient labels. See 21 U.S.C. §343(w)(1)(A)-(B). Under 21 U.S.C. § 343(q)(5)(a)(2), an exemption to such labeling requirements is made for food "which is processed and prepared primarily in a retail establishment, which is ready for human consumption . . . and which is offered for sale to consumers but not for immediate human consumption in such establishment and which is not offered for sale outside such establishment." The related federal regulations explain that this exemption applies to foods made on-site at in-store bakeries where they are sold, so long as they are not offered for sale outside of that establishment. 21 C.F.R. § 101.9(j)(3).[6] It is undisputed that the Cookie was baked from scratch in the Publix bakery where it was sold and was offered for sale only through that store's own full-service bakery counter. Accordingly, under the plain language of the statute, the FALCPA did not require Publix to place an ingredient label on the Cookie and Publix did not violate the FALCPA.

A great deal of the briefing by both parties addresses their dispute as to whether Publix's exemption from the FALCPA's labeling requirements would entitle Publix to a rebuttable presumption that it is not liable, under Tennessee law, for the failure to label the Cookie. The

---

[6] The court notes that the FDCA and the corresponding regulations frame this exemption as applying solely to the nutritional labelling requirements laid out in subsection q of the FDCA and not to the *ingredient* labeling requirements under subsections (g) and (i), which are expressly incorporated into the FALCPA. The only logical reading of the statute, however, is that this exemption applies to all FDCA labeling requirements. This is consistent with the parties' prior briefing and the court's Memorandum on an earlier motion to dismiss. (Docket Nos. 11, 15, 23.) Indeed, with respect to bakeries, the FDA website specifically states that the "FALCPA's labeling requirements do not apply to foods that are placed in a wrapper or container in response to a consumer's order – such as the paper or box used to provide a sandwich ordered by a customer," language consistent with the regulations related to this exemption. *See* http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Allergens/ucm106890.htm#q15.

7

plaintiff argues that such a presumption does not apply because *exemption* from a statute's regulations is different from *compliance*, and the presumption applies only in the latter instance. Publix argues that there is no such distinction and that the presumption is warranted. The court need not, however, reach this issue because the FDCA contains an express preemption clause that neither of the parties addresses in their briefing but that clearly warrants dismissal of the plaintiff's label-based claims as a matter of law.

The preemption clause contained in the FALCPA provides that a party cannot be held liable under state law for allergen labeling activity that is *not* a FALCPA violation. 21 U.S.C. § 343-1(a)(2) ("no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section . . . 343(w) . . . of this title that is not identical to the requirement of such section."); *see also Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (explaining that a state can only enforce state law food labeling liability that is coextensive with the FDCA, due to the nature of the preemption clause, but nothing beyond that); *New York State Restaurant Ass'n v. New York City Bd. of Health*, 556 F.3d 114 (2d Cir. 2009); *Nemphos v. Nestle Waters North America, Inc.*, 775 F.3d 616 (4th Cir. 2015). Accordingly, the plaintiff cannot proceed with his state law claims to the extent that they are based on Publix's failing to label the Cookie as containing pecans. Not only does the FALCPA not require Publix to have labeled the Cookie but the FALCPA also expressly addresses food products like the Cookie that are baked on site at the retail bakeries where they are exclusively sold, and it expressly provides that such products do not need to be labeled. Accordingly, any causes of action that seek to hold Publix liable for not labeling the Cookie are expressly preempted.

8

To the extent that the plaintiff argues that Publix had a separate duty to warn customers of pecans in chocolate chew cookies, not as a matter of allergen ingredient labeling, but as a matter of the product being unreasonably dangerous as sold (absent any warning), that claim also fails. Under Tennessee law, "[a] manufacturer or seller of a product shall not be liable for any injury to a person . . . caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. §29-28-105. Unreasonably dangerous is defined as:

> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

*Id*. at §29-28-102(8). With respect to the presence of allergens in food products, as noted in the court's prior opinion on Publix's Motion to Dismiss, federal district courts have interpreted the Second Restatement of Torts (which is the model for Tennessee law) to mean that a food product is only unreasonably dangerous where the allergen ingredient is one a reasonable customer would not expect to the find in the product. *See Livingston v. Marie Callendar's, Inc.*, 72 Cal. App. 4th 830, 832 (1999).

The court finds, as a matter of law, that no reasonable jury could find that an ordinary person would *not* expect that a bakery cookie, particularly a chocolate brownie cookie, might contain a pecan or other tree nut. This case is clearly distinguishable from other cases cited by the plaintiff where product defect claims have prevailed because an allergen ingredient was objectively unexpected by a reasonable consumer and impossible to detect in a particular food product. *Livingston*, 72 Cal. App. 4th 830 (MSG in vegetable soup advertised by a restaurant as "made from the freshest ingredients, from scratch); *Allen v. Delchamps, Inc.*, 624 So. 2d 1065,

9

1068-69 (Ala. 1993) (sulfite preservatives on raw vegetables from a grocery store). Accordingly, the plaintiff may not proceed with his claims that are based on Publix's failure to label the Cookie with an ingredient list or otherwise affirmatively warn customers that the Cookie contained pecans. The court, therefore, need not reach the question of punitive of damages with respect to any such claims.

The plaintiff may, however, proceed with his negligence claim, to the extent that it is based on allegations that the conversation between Landon's family and Ms. Henderson caused Landon's family to believe that the Cookie did *not* contain pecans, a claim that is not challenged by the instant motion and for which there is a clear dispute of material fact. With respect to punitive damages arising from this claim, Publix argues that they are not appropriate because, at most, the plaintiff's evidence supports a finding that Ms. Henderson *omitted* to inform Landon's family that the Cookie contained pecans, but there is no evidence that Ms. Henderson ever *affirmatively* stated that the Cookie did not have pecans or other nuts. According to Publix, such an omission cannot – as a matter of law – provide a legal basis for a finding of recklessness, let alone malice, so as to support a punitive damages verdict. The court finds, however, that the effect of such an omission by Ms. Henderson, if found true, is a question of fact for the jury and that a reasonable jury could find that this omission – particularly if accompanying a finding by the jury that Ms. Cline informed Ms. Henderson of Landon's tree nut allergy and inquired about the ingredients in the Cookie – was, in fact, sufficiently reckless to properly award punitive damages.[7]

---

[7] Publix refers to the minimum standard for punitive damages as one of gross negligence. The Supreme Court of Tennessee, however, has indicated that recklessness, rather than gross negligence, is required. *See N.H. ex rel. Hernandez v. Sequoyah Council, Inc.*, No. 2:11-cv-171 , 2012 WL 2126863, at * 2, n. 1 (E.D. Tenn. April 30, 2012) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900-01 (Tenn. 1992)).

It is true that the plaintiff has placed no evidence in the record to suggest that Ms. Henderson or Publix intentionally or maliciously caused Landon's family to believe that the Cookie did not contain nuts, nor is there any evidence in the record that Publix negligently (let alone recklessly) failed to train Ms. Henderson so as to cause this situation to happen. In fact, the plaintiff has proffered no evidence about Ms. Henderson's training whatsoever with respect to punitive damages at issue in this motion. A trier of fact could find, however, that Ms. Henderson's actions were reckless and that Publix is vicariously liable for such recklessness, which would render Publix subject to punitive damages. *See Bownman v. Bulkmatic Transport Co., Inc.*, 739 F.Supp.2d 1028, 1042 (E.D. Tenn. 2010) ("Under Tennessee law, punitive damages may be awarded against a principal whose liability arises from the acts of an agent. *See Medlin v. Clyde Sparks Wrecker Serv., Inc.*, 59 F. App'x 770, 775 n. 4 (6th Cir. 2003); *see also Dodson v. Anderson*, 710 S.W.2d 510, 513 (Tenn. 1986); *Huckeby v. Spangler*, 563 S.W.2d 555, 559 (Tenn. 1978)."). Accordingly, the plaintiff's negligence claim may proceed, to the extent that it arises from the conversation between Ms. Henderson and Landon's family, and the plaintiff may also proceed with his request for punitive damages related to this claim.

## CONCLUSION

For the foregoing reasons, Publix's Motion for Partial Summary Judgment will be granted in part and denied in part.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

11